**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ROLAND WILSON,** | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **v.** | § | **3:14-CV-3748-N-BK** |
| | § | |
| **TROYLANDIA ANDREA JACKSON,** | § | |
| **et al.,** | § | |
| **Defendants.** | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

On October 20, 2014, Plaintiff, proceeding without the assistance of counsel, filed his

*Original Verified Civil Rights Class Lawsuit and Complaints of Racial Discrimination and*

*Massive Governments Corruptions*, Doc. 1, which was automatically referred to the United

States Magistrate Judge.  *See* 28 U.S.C. § 636(b) and *Special Order 3*.  The Court granted the

motion to proceed *in forma pauperis*, but did not issue process pending preliminary screening.

For the reasons that follow, this case should be summarily dismissed.

**I. BACKGROUND**

Plaintiff asserts civil rights violations under 42 U.S.C. §§ 1983, 1985, 1986, 1987, and

1988 for "embezzlement, extortion, wrongful eviction, [and] retaliation." [Doc. 1 at 1-2, 17].

Named as defendants are Troylandia Andrea Jackson [who apparently is Plaintiff's landlord];

McKenzie Redic, Realtor; Kristian Leah Smiley, Property Owner;  McKenzie Manor Boarding

Home Company, et al.; Eric Pierce, Dallas Building Code Compliance Officer; the Dallas City

Building Code Compliance Department; Thomas Perkins, Chief Dallas City Attorney; the Dallas

City Council; Greg Abbott, Texas Attorney General; Eric Holder, United States Attorney

1

General; the United States Department of Justice; the City of Dallas, Texas; and Outdoor Power

Equipment Company.  [Doc. 1 at 1-2, 17].  He requests $75 million in compensatory and

punitive damages, declaratory and injunctive relief, and "an emergency T.R.O. and/or PI."  [Doc.

1 at 12-13, 14].[1]

    The bulk of Plaintiff's complaint focuses on Jackson's actions and inactions.  As best as

the Court can decipher, Plaintiff contends that "Jackson and others purposefully, knowingly, and

intentionally . . . embezzled and extorted more than . . . $50,000.00 cash money, personal labored

services, commercial business services" from Plaintiff.  [Doc. 1 at 2-3].  He asserts that in

September 2011, he signed a $400.00 per month, "all bills paid" lease agreement.  [Doc. 1 at 3].

Two weeks later, however, Jackson amended the lease agreement to require Plaintiff to pay all

utilities going forward.  [Doc. 1 at 3-4].  Although Jackson promised to deliver a copy of the

amended lease agreement, Plaintiff claims Jackson "lied and never ever even attempted to make

and serve upon him, his entitled copy."  [Doc. 1 at 4].  Plaintiff maintains that Jackson has

continued to lie, playing "life endangerment games, psychotic games, [being] disrespectful,

misusing and abusing, mistreating, retaliating, destroying friendships, [and] illegally taking

others [sic] property, among a laundry list of other violations and commissions."  [Doc. 1 at 4-5].

He states that Jackson "has literally forced [him] . . . to operate, manage, supervise and care for

her boarding home, 'McKenzie Manor Boarding Home,' and two [2] of her tenants both

M.H.M.R. patience [sic]" without consent and compensation.  [Doc. 1 at 5].

    In addition, Plaintiff claims that Jackson has "operated . . . an unsafe, unhealthy,

hazardous, uninhabitable, and dangerous 'Boarding Home.'"  Plaintiff further avers that although

---

[1] Plaintiff lists the jurisdictional bases and cause of actions for his suit on the civil cover sheet.
[Doc. 1 at 17].  While he also claims "child abuse," none of the assertions in his complaint relate
to a child or even come close to alleging "child abuse."  [Doc. 1 at 17].

Jackson repeatedly promised "to make . . . needed life threatening repairs," she adamantly refused to do so, leaving "open, loose and live electrical wirings" and a damaged main circuit electrical power box.  [Doc. 1 at 5-6].  Plaintiff also contends that Jackson refused to take George Kennedy Titus to the hospital, despite his life-threatening medical condition, and has wholly failed in her "responsibilities as sole benefactor for" Titus and Claude Simmons.  [Doc. 1 at 6].

Next, Plaintiff complains of an "unconstitutional eviction" from the boarding house. [Doc. 1 at 7].  He contends that on October 2, 2014, a rain storm knocked down a tree, which fell on the boarding house, completely tearing out "the electrical meter and power utility system," and rendering the house inhabitable.  [Doc. 1 at 7].  Plaintiff maintains that Jackson has been forced, "through specific and strict orders" of the Dallas Building Code Compliance Department, in particular Chief Counsel Perkins, to take "wrongful and illegal retaliatory action upon Plaintiff by forcing his "untimely and unconstitutional eviction."  [Doc. 1 at 7-8].  Plaintiff argues that Jackson's actions and omissions constitute "extreme and outrageous misconduct that is in violation of both state and federal civil and criminal statutes."  [Doc. 1 at 8].

Plaintiff asserts that Jackson damaged his lawn service business with Defendant Outdoor Power and Equipment by lying, in June 2011, that he did not pay his rent.  [Doc. 1 at 9].  He further claims that Outdoor Power and Equipment has refused to return some of his lawn equipment, which was delivered to them for repair in May 2014.  [Doc. 1 at 9].  Plaintiff maintains that "[t]his infringement" amounts to "conspiracy to harm complainant and his business."  [Doc. 1 at 9].  Although Plaintiff filed multiple complaints with the United States Department of Justice and the Texas Attorney General, he has yet to receive any relief.  [Doc. 1 at 10].

3

Lastly, Plaintiff complains vaguely of a conspiracy to discriminate against him on the basis of race:

> Chief Class Complainant [Wilson] avers that, due to the multiple ongoing known open, blatant bold aggressive, oppressive and suppressive, racial discriminatory conspiracies upon "Black African Americans" civilians and neighborhoods and communities, this particular original verified civil rights class action lawsuit and complaints of racial discriminations and massive governments [sic] corruptions, with a demanded trial by jury, will necessarily crisscross other ongoing litigations, specifically naming these defendants herein, and all of them, and multiple of them, but particularly Defendant Troylandia A. Jackson, and others, in three (3) other separate, single, and "new" warranted civil rights class action lawsuits, that will consistently continue to calculate until Defendants U.S. Dept of Justice steps in, and take some forms of appropriate actions herein.

[Doc. 1 at 10].  He adds:

> Due to multiple known and unknown open, bold, and blatant racial discriminatory acts, and conspiratorial racial discrimination acts, being carried out continuously and wrecklessly [sic], non-stop, these Defendants and all of them, are the cause of, and part of, a nasty, disrespectful, corruptive, racist, prejudice, divided, repressive government; and also are the cause of, and part of, a nasty, disrespectful, dangerous, environment, society and world.

[Doc. 1 at 13].

## II. ANALYSIS

Because Plaintiff is proceeding *in forma pauperis*, his complaint is subject to screening under 28 U.S.C. § 1915(e)(2)(B).  That statute provides for *sua sponte* dismissal of a complaint if the Court finds that it (1) is frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).   A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327.

The Court liberally construes Plaintiff's complaint, as supplemented by the answers to the questionnaire, with all possible deference due a *pro se* litigant.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers).  Even under this most liberal construction, however, Plaintiff's allegations lack any legal basis and should be dismissed as frivolous.

### **Additional Plaintiffs and Class Action Request**

At the outset, the Court notes that Plaintiff purports to bring claims on behalf of one or more of his companions, friends, and co-partners.[2]  However, as a *pro se* litigant he cannot represent another *pro se* litigant.  *See Gonzales v. Wyatt*, 157 F.3d 1016, 1021-1022 (5th Cir.1998) ("in federal court a party can represent himself or be represented by an attorney, but cannot be represented by a nonlawyer."); 28 U.S.C.A. § 1654 (permitting only two types of representation – by an attorney admitted to the practice of law or by a person representing himself).  Moreover, insofar as he seeks to bring a class action, his request should be denied.  Plaintiff has not complied with Local Rule 23.1, which requires a class action complaint to include separate class action allegations.[3]  In any event, it is not appropriate to allow *pro se* litigants to serve as class representatives.  *See Amir-Sharif v. Dallas County*, 3:06-CV-0143-K, 2006 WL 2860552 at *4 (N.D. Tex. Oct. 5, 2006) (denying *pro se* plaintiff's motion for class action certification).

---

[2] Although the caption of the complaint only lists Plaintiff's name, the body of the complaint names several of his companions, friends, and copartners.

[3] Local Rule 23.2 also requires a motion for certification within 90 days of the filing of a proper class action complaint.

**Violations of 42 U.S.C. § 1983**

Plaintiff sues for civil rights violations under 42 U.S.C. § 1983.  However, he cannot satisfy the "under color of state law" requirement as to Jackson, Redic, Smiley, McKenzie Manor Boarding Home, and Outdoor Power and Equipment.  *See West v. Atkins*, 487 U.S. 42, 48 (1988) (to pursue a claim under section 1983, a plaintiff must allege (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by one acting under color of state or federal law).  These Defendants are private individuals and entities, and Plaintiff does not allege, let alone prove, that their alleged actions were fairly attributable to the state.  *See Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005) (summarizing tests used to decide whether a private actor's conduct can be fairly attributable to the State, and noting that section 1983 does not reach "private conduct, no matter how discriminatory or wrongful").  Moreover, Plaintiff does not plead that any of the non-state actors acted in concert with a state actor to deprive him of his rights.  *Mylett v. Jeane*, 879 F.2d 1272, 1275 (5th Cir. 1989) (for a private party to be held liable under section 1983, "the plaintiff must allege and prove that the [non-state actor] conspired with or acted in concert with state actors."); *see also Castro Romero v. Becken,* 256 F.3d 349, 355 (5th Cir. 2001) (finding no section 1983 liability absent allegation that non-governmental defendants acted in concert with a governmental entity to deprive the plaintiff of his rights).  While Plaintiff mentions the word conspiracy a few times, "[a]llegations that are merely conclusory, without reference to specific facts, will not suffice."  Priester v. Lowndes County, 354 F.3d 414, 420 (5th Cir. 2004).

Nevertheless, even assuming all Defendants were state actors, Plaintiff's bare allegations of embezzlement, extortion, retaliation, lies, wrongful eviction, hazardous living conditions, and disagreement over his lease terms do not rise to the level of a constitutional violation.  Insofar as

6

Plaintiff sues Jackson and other Defendants for embezzlement and extortion, criminal statutes do not create a private right of action.  For a private right of action to exist under a criminal statute, there must be "a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone."  *Cort v. Ash*, 422 U.S. 66, 79 (1975); *see* *Suter v. Artist M.*, 503 U.S. 347, 363 (1992) (the party seeking to imply a private right of action bears the burden to show that Congress intended to create one).  Plaintiff has pled nothing that would even come close to meeting that burden.

The same is true as to any attempt by Plaintiff to raise a constitutional claim stemming from the alleged intentional infliction of emotional distress as a result of Jackson's actions and omissions in connection with the lease dispute, the alleged retaliation, and the poor conditions of the rental property.  *See* *Ward v. Bechtel Corp.*, 102 F.3d 199, 203 (5th Cir. 1997) (intentional infliction of emotional distress is a state law tort claim).  In addition, by the mere mention of conspiracy, Plaintiff has not pled an agreement between the Defendants to inflict a wrong or injury and an overt act that results in damages.  *Crowe v. Lucas*, 595 F.2d 985, 993 (5th Cir. 1979); *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986) (quoting *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982)) ("'Mere conclusory allegations of conspiracy cannot, absent reference to material facts,' state a substantial claim of federal conspiracy under 42 U.S.C. § 1983.")).

In any event, contrary to Plaintiff's assertion [Doc. 1 at 15], any civil rights claim that arose before October 2012 (two years from the date of filing this action) is time-barred.  *See* *Stanley v. Foster*, 464 F.3d 565, 568 (5th Cir. 2006) (applying two-year limitations period to section 1983 action).  Thus, the 2008 and 2011 claims Plaintiff references are not cognizable.

Based on all the foregoing, Plaintiff's section 1983 claims lack any legal basis.

7

**Violations of 42 U.S.C. §§ 1985, 1986**

Insofar as Plaintiff relies on 42 U.S.C. § 1985(3), his claim fares no better.[4]  Section 1985(3) prohibits conspiracies to deprive a person of equal protection of the laws or of equal privileges and immunities under the laws on the basis of race.  *Griffin v. Breckenridge,* 403 U.S. 88, 102–103 (1971).  While Plaintiff vaguely references "racial discriminatory conspiracies upon 'Black African Americans' civilians and neighborhoods and communities," and "open, bold, and blatant racial discriminatory acts" [Doc. 1 at 10, 13], he pleads no facts in support of his claim.  Bald allegations that a conspiracy existed are insufficient under the civil rights statutes.  *See Lynch v. Cannatella*, 810 F.2d 1363, 1369-1370 (5th Cir. 1987).  Plaintiff has not alleged that any of the Defendants conspired or otherwise agreed to deprive him of constitutional rights.  *Jackson v. Biedenharn*, 429 F. Appx. 369, 372 (5th Cir. 2011) (rejecting claim under section 1985(3) because of conclusory assertion of conspiracy).  Moreover, although section 1985(3) covers private conspiracies, it was not "intended to apply to all tortious, conspiratorial interferences with the rights of others."  *Griffin*, 403 U.S. at 101-102.  Further, while Plaintiff purports to bring a claim under section 1986, he does not allege a valid corollary violation of section 1985, which is a prerequisite to a section 1986 claim.  *See Bryan v. City of Madison*, 213 F.3d 267, 276 (5th Cir. 2000) (noting that liability under section 1986 requires a valid section 1985 violation).  Thus, his sections 1985 and 1986 claims have no legal basis.

---

[4] Since sections 1985(1)-(2) relate to preventing an officer from performing duties, or intimidating a party, witness, or juror in a court proceeding, they are not relevant here.  *See* 42 U.S.C. § 1985.

**Violations of 42 U.S.C. §§ 1987, 1988**

Likewise, neither 42 U.S.C. § 1987 nor 42 U.S.C. § 1988 provides an independent cause of action for alleged deprivations of Plaintiff's constitutional rights.  While section 1987 authorizes federal officials to prosecute violations of certain federal laws, 42 U.S.C. § 1987, section 1988 merely "instructs federal courts as to what law to apply in causes of action arising under federal civil rights acts."  *Moor v. County of Alameda*, 411 U.S. 693, 703-704 (1973). Accordingly, Plaintiff's reliance on sections 1987 and 1988 is untenable.  *See Atomanczyk v. Quarterman*, No. 2:07-CV-0052, 2008 WL 941205, at *4 (N.D. Tex. Apr. 3, 2008) (dismissing as frivolous claim under section 1987); *Brown v. McDonald Corp.*, No. 3:03-CV-0928-N, 2003 WL 21529188, at *2 (N.D. Tex. Jul. 1, 2003) (same as to claim under section 1988).

**State law Claims**

Lastly, to the extent Plaintiff seeks to assert state law claims, the Court should decline to exercise supplemental jurisdiction over those claims.  *See* 28 U.S.C. § 1367(c).  In determining whether to relinquish supplemental jurisdiction over pendent state law claims, the court looks to the statutory factors set forth in section 1367(c), as well as to the common law factors of judicial economy, convenience, fairness, and comity.  *Enochs v. Lampasas Cty.*, 641 F.3d 155, 161 (5th Cir. 2011) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (setting forth the common law factors)).  The statutory factors are: (1) whether the state claims raise novel or complex issues of state law; (2) whether the state claims substantially predominate over the federal claims; (3) whether the federal claims have been dismissed; and (4) whether there are exceptional circumstances or other compelling reasons for declining to exercise jurisdiction.  28 U.S.C. § 1367(c); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726-727 (1966) (setting forth the common law precursor to section 1367(c)).

9

The weight of the statutory factors in this case favors relinquishing jurisdiction because the federal claims have been recommended for dismissal as frivolous and, thus, the state claims completely predominate, and there are no compelling reasons for retaining jurisdiction. 28 U.S.C. § 1367(c). Moreover, this case is in its infancy and exercising supplemental jurisdiction would not serve the values of judicial economy, convenience, fairness, and comity. *Carnegie-Mellon*, 484 U.S. at 350.

### III. LEAVE TO AMEND

Ordinarily, a *pro se p*laintiff should be granted leave to amend his complaint prior to dismissal. *See Brewster v. Dretke,* 587 F.3d 764, 767–68 (5th Cir. 2009). Here, even taking Plaintiff's factual assertions as true, his claims are fatally infirm for all the reasons discussed. **Nevertheless, Plaintiff is granted 14 days from the date of this Recommendation to amend his complaint to state a viable claim against one or more Defendants.** If Plaintiff fails to do so, the Court should dismiss this case with prejudice as frivolous. *See Brown v. Texas A&M Univ.*, 804 F.2d 327, 334 (5th Cir. 1986) ("Unless we have searched every nook and cranny of the record, like a hungry beggar searching a pantry for the last morsel of food, and have determined that 'even the most sympathetic reading of plaintiff's pleadings uncovers no theory and no facts that would subject the present defendants to liability,'" he must be permitted to amend his claim if he can do so.).

### IV. SANCTION WARNING

Plaintiff is no stranger to this Court. In 2010, he voluntarily dismissed his first civil rights action after the Court issued a questionnaire, which sought to expand on the factual allegations in the complaint. *Wilson v. I.T.M.O.A.W.M. #1-7*, No. 3:10-CV-2522-P-BH (N.D. Tex. 2010). Then, in 2013, he filed a civil rights action under 42 U.S.C. §§ 1983, 1985, 1986

and 1988, which was dismissed with prejudice as frivolous.  *Wilson v. Lochry, et al.*, No. 3:13-CV-1227-P-BH, 2013 WL 3203363, at *1 (N.D. Tex. 2013).  In September 2014, Plaintiff submitted a new complaint, which appears to be nothing more than a reiteration of his 2013 lawsuit.  *See Wilson v. Burchett et al*, No. 3:14-CV-3459-K-BN (N.D. Tex. Nov. 10, 2014) (Magistrate Judge's recommendation dismissing case as frivolous and/or for failure to state a claim pending).

  Given his filing history and the frivolousness of the claims asserted in this case, Plaintiff should be warned that if he persists in filing frivolous or baseless cases, the Court may impose monetary sanctions and/or bar him from bringing any further action.  *See* Fed. R. Civ. P. 11(b)(2) and (c)(1) (providing for sanctions against *pro se* litigants or attorneys).  Sanctions may be appropriate when a *pro se* litigant has a history of submitting multiple frivolous claims.  *Mendoza v. Lynaugh*, 989 F.2d 191, 195-97 (5th Cir. 1993); *see also Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 802-03 (5th Cir. 2003) (a violation of any provision of Rule 11(b) justifies sanctions).  *Pro se* litigants have "no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets."  *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir.1986).  Moreover, litigants who abuse the judicial process are "not entitled to sue and appeal without paying the normal filing fees -- indeed, are not entitled to sue and appeal, period."  *Free v. United States*, 879 F.2d 1535, 1536 (7th Cir. 1989).

## V. RECOMMENDATION

For the foregoing reasons, it is recommended that this action be summarily **DISMISSED** with prejudice as frivolous under 28 U.S.C. § 1915(e)(2)(B), unless Plaintiff amends his complaint, within 14 days of the date of this recommendation, to allege a viable claim against one or more Defendants.  *See* 28 U.S.C. § 1915(e)(2)(B).

It is further recommended that in the event of dismissal, Plaintiff be **WARNED** that sanctions may be imposed if he persists in filing frivolous or baseless actions.

SIGNED November 13, 2014.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n, 79 F.3d 1415, 1417 (5th Cir. 1996)*.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

12